# UNITED STATES DISTRICT COURT

## DISTRICT OF MARYLAND

CHAMBERS OF
SUSAN K. GAUVEY
U.S. MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_skgchambers@mdd.uscourts.gov
(410) 962-4953
(410) 962-2985 - Fax

September 11, 2013

W. James Nicoll, Esq.
Jenkins, Block & Associates, P.C.
1040 Park Avenue, Suite 206
Baltimore, MD 21201

Alex S. Gordon, Esq.
Office of the United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore, MD 21201

    Re:  Christine Ellen Swoboda v. Carolyn W. Colvin
         Civil Action No. SKG-10-2478

Dear Counsel:

    Plaintiff, Christine Ellen Swoboda, by her attorney,

William James Nicoll, filed this action seeking judicial review

pursuant to 42 U.S.C. § 405(g) of the final decision of the

Commissioner of the Social Security Administration ("the

Commissioner"), who denied her claim for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") under

sections 205(g) and 1631(c)(3) of the Social Security Act ("the

Act").  This case has been referred to the undersigned

magistrate judge by consent of the parties pursuant to 28 U.S.C.

§ 636(c) and Local Rule 301.  No hearing is necessary.  Local
Rule 105.6.

Currently pending before the Court are cross motions for
summary judgment and plaintiff's request for remand in the
alternative.  The Court acknowledges that Ms. Swoboda has a
serious medical history and has faced many personal
difficulties.  However, the Court has concluded that under the
applicable law, she is not entitled to disability.  For the
reasons that follow, the Court hereby DENIES plaintiff's motion
for summary judgment, GRANTS defendant's motion for summary
judgment, and AFFIRMS the decision of the Commissioner.

## I.  Procedural History

On March 16, 2007, plaintiff applied for DIB and SSI
benefits, alleging that she had become unable to work beginning
February 20, 2007 due to physical and mental illness.  (R. 20,
128, 136).

Plaintiff's applications for DIB and SSI were denied
initially on May 31, 2007 and upon reconsideration on January 4,
2008.  (R. 44).  On January 25, 2008, the plaintiff filed a
request for a hearing by an Administrative Law Judge ("ALJ").
(R. 44).  On January 9, 2009, ALJ Judith A. Showalter held a
hearing.  (R. 44).  On April 24, 2009, the ALJ issued an

unfavorable written decision that plaintiff was not disabled within the meaning of the Act. (R. 44).

On November 2, 2010, this Court ordered a remand under Sentence Six of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), based on consent of the parties, because the January 2009 hearing recording could not be located and a certified administrative record could not be prepared. (R. 71-73). Pursuant to the remand order, the Appeals Council ordered a *de novo* hearing. (R. 44). On February 10, 2011, the ALJ held a second hearing. (R. 20). On March 11, 2011, the ALJ issued an unfavorable written decision that plaintiff was not disabled within the meaning of the Act. (R. 17).

The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the agency. (R. 7). Plaintiff now seeks review of that decision pursuant to 42 U.S.C. § 405(g). (ECF No. 16).

## II.  **Factual History**

The Court has reviewed the Commissioner's Statement of Facts and, finding that it accurately represents the record in all material respects, hereby adopts it. (ECF No. 18-2, 2-14).

## III. **ALJ Findings**

In reviewing a claimant's eligibility for DIB and SSI, an ALJ must consider all of the evidence in the record and follow

the sequential five-step analysis set forth in the regulations
to determine whether the claimant is disabled as defined by the
Act.  20 C.F.R § 416.920(a).[1]  If the agency can make a
disability determination at any point in the sequential
analysis, it does not review the claim further.  20 C.F.R. §
404.1520(a)(4).  After proceeding through each of the required
steps, the ALJ in this case concluded that Ms. Swoboda was not
disabled as defined by the Act.  (R. 21).

    At the first step, the claimant must prove that he or she
is not engaged in "substantial gainful activity."[2]  20 C.F.R. §
416.920(a)(4)(i).  If the ALJ finds that the claimant is engaged
in "substantial gainful activity," he or she will not be
considered disabled.  (Id.).  Here, the ALJ found that Ms.
Swoboda has not engaged in substantial gainful activity since
February 20, 2007.  (R. 12).

    At the second step, the ALJ must determine whether the
claimant has a severe, medically determinable impairment or a
combination of impairments that limit her ability to perform

---

[1] Disability is defined in the Act as the "inability to engage in any
substantial gainful activity by reason of any medically determinable physical
or mental impairment which can be expected to result in death or has lasted
or can be expected to last for a continuous period of not less than 12
months."  42 U.S.C. § 416(i)(1)(A).

[2] Substantial gainful activity is defined as "work activity that is both
substantial and gainful."  20 C.F.R. § 416.972.  Work activity is substantial
if it involves significant physical or mental activities and even if it is
part time or if plaintiff is doing less, being paid less, or has fewer
responsibilities than when she worked before.  20 C.F.R. § 416.972(b).
Substantial gainful activity does not include activities such as household
tasks, taking care of oneself, social programs, or therapy.  20 C.F.R. §
416.972(c).

basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c);
see also 20 C.F.R. §§ 404.1521, 416.921. In addition, there is
a durational requirement that the claimant's impairment last or
be expected to last for at least 12 months. 20 C.F.R. §
416.909. Here, the ALJ found that Ms. Swoboda suffered from
several severe impairments. (R. 23). She found that Ms.
Swoboda suffers from cervical and lumbar spine degenerative disc
disease, left shoulder partial rotator cuff tear with adhesive
capsulitis, status post surgeries, obesity, depression, and
posttraumatic stress disorder. (Id.). The ALJ found that Ms.
Swoboda's carpal tunnel syndrome is non-severe because the
record reflects medical improvement post-surgery. (R. 24). She
also found that Ms. Swoboda's asthma is non-severe because it is
controlled with medication and there is minimal evidence to
support a finding of significant vocational impact. (Id.).

At the third step, the ALJ considers whether the claimant's
impairments, either individually or in combination, meet or
equal an impairment enumerated in the "Listing of Impairments"
in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §
416.920(a)(4)(iii). If one of the Listings is met, disability
will be found without consideration of age, education, or work
experience. 20 C.F.R. § § 404.1520(d), 416.920(d). Here, the
ALJ found that Ms. Swoboda does not have an impairment or

combination of impairments that meets or equals an impairment enumerated in the "Listing of Impairments." (R. 24).

Before an ALJ advances to the fourth step of the sequential analysis, he must assess the claimant's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. Social Security Ruling (SSR) 96-8p. The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining a claimant's RFC, an ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the

credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96-7p. To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. (Id.).

Here, the ALJ determined that Ms. Swoboda has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). (R. 26). The ALJ further found Ms. Swoboda can do no climbing of ladders, ropes, or scaffolds, can perform all other postural activities occasionally, must avoid working overhead with both arms and avoid pushing/pulling with the left upper extremity, must avoid concentrated exposure to hazards, odors, dust, gases, poor ventilation, and fumes, and can perform simple, unskilled work which is essentially isolated, defined as only occasional supervision and contact with coworkers, and low stress work, defined as only occasional need to make decisions or use judgment. (Id.).

After considering the evidence, the ALJ determined that Ms. Swoboda's medically determinable impairments, including her neck, back, shoulder, extremity, and mental issues, could reasonably be expected to cause the alleged symptoms. (R. 28). However, the ALJ found that Ms. Swoboda's testimony concerning

the intensity, persistence, and limiting effects of the symptoms were not credible as they were inconsistent with the functional capacity reflected in the record. (Id.). In making this determination, the ALJ relied upon treatment notes, MRIs, X-rays, and Ms. Swoboda's own statements to her doctors, which did not support the allegations of significant or persistent disabling pain and stiffness. (Id.). The ALJ also noted that treatment records, X-rays, and Ms. Swoboda's statements to her doctors indicated improvement and lack of abnormalities in Ms. Swoboda's shoulder. (R. 29). The ALJ reviewed Ms. Swoboda's mental health history, including treatment records, GAF scores, and progress notes, which reflected stability and improvement, despite instances of hospitalization for treatment. (R. 30-31). Finally, the ALJ relied upon opinion evidence from Ms. Swoboda's physicians and the findings of the state agency consultants in reaching her final conclusions about Ms. Swoboda's RFC. (R. 31-33).

At the fourth step of the sequential analysis, the ALJ must consider whether the claimant retains the RFC necessary to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that Ms. Swoboda's RFC precludes her past work as a cashier and a cook. (R. 33). The ALJ therefore concluded that Ms. Swoboda is unable to perform any past relevant work. (Id.).

Where, as here, the claimant is unable to resume her past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. This step requires consideration of whether, in light of vocational factors such as age, education, work experience, and RFC, the claimant is capable of other work in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). At this step, the burden of proof shifts to the agency to establish that the claimant retains the RFC to engage in an alternative job which exists in the national economy. McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The agency must prove both the claimant's capacity to perform the job and that the job is available. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983). Before the agency may conclude that the claimant can perform alternative skilled or semi-skilled work, it must show that she possesses skills that are transferable to those alternative positions or that no such transferable skills are necessary. McLain, 715 F.2d at 869.

In this case, the ALJ found that although Ms. Swoboda is unable to perform her past relevant work, given her age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that she can perform. (R. 34). Based on the testimony of the vocational expert (VE), the ALJ determined that Ms. Swoboda could perform the requirements of

representative occupations such as cafeteria attendant (85,000 jobs nationally, 400 jobs locally), general office helper (125,000 jobs nationally, 400 jobs locally), machine tender (65,000 jobs nationally, 150 jobs locally), and addresser (75,000 jobs nationally, 175 jobs locally).  (Id.).

## IV.  Standard of Review

The function of this Court on review is to leave the findings of fact to the agency and to determine upon the whole record whether the agency's decision is supported by substantial evidence, not to try plaintiff's claim de novo.  King v. Califano, 599 F.2d 597, 598 (4th Cir. 1979).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if the ALJ employed the proper legal standards.  42 U.S.C. §§ 405(g), 1383(c)(3) (2001); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Substantial evidence "consists of more than a scintilla of evidence but may be somewhat less than a preponderance."  Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).  It is "such relevant evidence as a reasonable mind might accept to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted).

In reviewing the decision, this Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  Craig, 76

10

F.3d at 589; Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Commissioner, as fact finder, is responsible for resolving conflicts in the evidence. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962). If the Commissioner's findings are supported by substantial evidence, this Court is bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). However, despite deference to the Commissioner's findings of fact, "a factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman, 829 F.2d at 517. The Court has authority under 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the agency "with or without remanding the case for a rehearing." Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991).

**V.   Discussion**

Plaintiff makes three arguments on appeal. First, plaintiff argues that the ALJ's mental RFC finding is erroneous due to a failure to include all of plaintiff's mentally related work limitations. Second, plaintiff argues that the ALJ's mental RFC finding is not supported by substantial evidence. Third, plaintiff argues that the ALJ's physical RFC finding is not supported by substantial evidence. The Court shall consider each argument in turn.

**A. The ALJ Did Not Err in Her Formulation of Plaintiff's Mental RFC.**

Plaintiff argues that the ALJ failed to include all of her mentally related work limitations in her mental RFC finding and that the limitation to "simple, unskilled" work was legally insufficient. (ECF No. 16-1, 9). More specifically, plaintiff contends that since the ALJ failed to specify plaintiff's limitations with understanding and memory, sustained concentration and persistence, social interaction, and adaptation, the ALJ's mental RFC finding and related questioning of the VE were erroneous. (Id.).

Defendant counters that the ALJ's mental RFC determination incorporated more limitations than just "simple, unskilled work." (ECF No. 18-2, 19). More specifically, defendant argues that the ALJ's determination sufficiently addressed limitations for social interaction and adaptation. (Id.). Finally, defendant asserts that a limitation to simple, unskilled work would have been sufficient under existing precedent.

The Fourth Circuit, in Fisher v. Barnhart, noted that "unskilled work" is a "term of art defined by regulation as 'work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.'" 181 F. App'x 359, 364 (4th Cir. 2006) (citing 20 C.F.R. § 404.1568(a)).

The court found that the ALJ's mental RFC finding was supported by substantial evidence and that the use of the terms "simple" and "unskilled work" in the mental RFC and VE questioning was proper. Id. The Court further emphasized that a hypothetical question to a VE is "unimpeachable if it 'adequately reflect[s]' a residual functional capacity for which the ALJ had sufficient evidence." Fisher v. Barnhart, 181 Fed Appx. 359, 364 (4th Cir. 2006)(citing Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005)).

In Bentley v. Chater, the Fourth Circuit similarly held that an ALJ properly limited a claimant with significant difficulties in pace, concentration, or persistence to "unskilled work of a simple, routine and repetitive nature[.]" No. 96-1782, 1997 U.S. App. LEXIS 10559, at *3 (4th Cir. 1997). Several cases from this Court provide similar factual situations and further illustrate the sufficiency of the ALJ's formulation of the plaintiff's mental RFC finding. See, e.g., Bowers v. Comm'r, Soc. Sec. Admin., CIV. SAG-11-1445, 2013 WL 150023, at *2 (D. Md. Jan. 11, 2013) ("The finding of a moderate impairment in concentration, persistence, and pace does not indicate that restrictions other than a limitation to simple, unskilled work would be necessary."); Taylor v. Astrue, CIV.A. BPG-11-0032, 2012 WL 294532, at *2 (D. Md. Jan. 31, 2012) (finding that a limitation to unskilled work was sufficient to accommodate mild-

to-moderate limitations stemming from a mental impairment);
Carter v. Astrue, CIV.A. CBD-10-1882, 2011 WL 3273060, at *10-11
(D. Md. July 27, 2011) (finding that the hypothetical limitation
of "routine, repetitive simple tasks with minimal interaction
with others" was adequate for a VE, when plaintiff alleged a
lack of specificity in addressing plaintiff's various
limitations); Melgarejo v. Astrue, CIV. JKS 08-3140, 2009 WL
5030706, at *2 (D. Md. Dec. 15, 2009) (finding that a limitation
to unskilled work was sufficient where mental impairments caused
at most mild-to-moderate limitations on plaintiff's daily living
activities, social functioning, and concentration, persistence
and pace); Bell v. Astrue, No. 8:07-cv-00924-JKS, slip op. at
*9 (D.Md. Mar. 12, 2008) ("Even a finding of moderate impairment
in a particular broad functioning area does not automatically
indicate that a claimant's condition will significantly impact
his or her ability to perform work-related functions.")

Here, the ALJ states, in pertinent part, that plaintiff is
limited to "simple, unskilled work which is essentially
isolated, defined as only occasional supervision and contact
with coworkers, and low stress work, defined as only occasional
need to make decisions or use judgment." (R. 26). The
hypothetical question posed to the VE used consistent language.
(R. 826).

The Court finds that the ALJ's mental RFC finding was not legally insufficient. First, in making her argument, plaintiff primarily relies upon a passage from <u>Ashley v. Astrue</u>, which reads:

> …the ALJ stated, in a rather conclusory fashion, that Ms. Ashley could perform "simple, routine, unskilled jobs with as little as possible interaction with the general public, co-workers, and supervisors." (Tr. 19). This was not an adequate assessment. *Hilton v. Barnhart* 2006 WL 4046076 (D. Kan.) citing *Wiederholt v. Barnhart, 121 Fed. Appx. 833 (10th Cir. 2005*) (the relatively broad unspecified nature of the description "simple" and "unskilled" does not adequately incorporate the more specific findings required). All limits on work related activities resulting from the mental impairment must be described in the mental RFC assessment. SSR 85-16 *Residual Functional Capacity for Mental Impairments* (1985 WL 56855, *2) (S.S.A).

<u>Ashley v. Astrue</u>, PWG-10-1014, 2012 WL 5568799, at *2 (D. Md. Nov. 14, 2012). While this passage is seemingly applicable, plaintiff omits key language distinguishing <u>Ashley</u> from the case at hand. The sentence immediately preceding the cited passage reads, "…the ALJ's RFC analysis did not include *any* of the required detailed findings." <u>Ashley</u>, 2012 WL 5568799, at *2 (emphasis added).

Indeed, <u>Ashley</u> was a case in which the ALJ performed no analysis of plaintiff's limitations in the mental RFC assessment. <u>Ashley</u>, 2012 WL 5568799, at *2. Rather, the ALJ

simply documented his findings as to plaintiff's limitations at
the second and third step of the sequential evaluation.  Id.
The ALJ's discussion of Ms. Ashley's mental limitations at steps
two and three "was not an RFC assessment, and did not satisfy the
ALJ's duties at step 4...'[T]he limitations identified in the
"paragraph B" and "paragraph C" criteria are not an RFC
assessment...The mental RFC assessment used at steps 4 and
5...require[s] a more detailed assessment by itemizing various
functions...'"  Id. (quoting SSR 96-8p (1996 WL 374184, *4
(S.S.A.)).

　　　Here, the ALJ did not commit the error found in Ashley.
Where in Ashley the ALJ failed to perform a mental RFC
assessment beyond his conclusory finding, the ALJ in the case at
hand performed a thorough assessment of plaintiff's limitations
at the RFC phase.  The ALJ itemized plaintiff's various
limitations, taking into account the state agency RFC assessment
and categorizing plaintiff's limitations as to their severity.
(R. 33).  The ALJ addressed plaintiff's limitations with regard
to concentration, persistence, or pace; social functioning;
activities of daily living; ability to understand, remember and
carry out detailed instructions; ability to maintain attention
and concentration for extended periods; ability to complete a
normal workday and work week; and ability to perform at a
consistent pace without unreasonable rest periods.  (Id.).  The

ALJ found these limitations to be mostly moderate, with a mild restriction for activities of daily living. (Id.). The ALJ provided an explanation whenever she accepted or rejected a given RFC finding from the state agency. (Id.). The ALJ also extensively reviewed plaintiff's mental health record in making her findings. (R. 26-33).

It is apparent that the ALJ accounted for plaintiff's limitations in the final mental RFC. The ALJ included plaintiff's limitations with social interaction, restricting her to isolated work with "only occasional supervision and contact with coworkers." (R. 26). Further, the ALJ addressed plaintiff's limitations with adaptation, limiting her to "*low stress* work, defined as only occasional need to make decisions or use judgment." (Id.) (emphasis added). These restrictions, as well as the restriction to "simple, unskilled work" encompass plaintiff's limitations with understanding and memory and sustained concentration and persistence. (Id.).

Even if the ALJ had only limited plaintiff to simple, unskilled work, this would not necessarily have been erroneous under existing precedent. Plaintiff's other limitations were moderate or mild. (R. 33). A limitation to unskilled work is "sufficient to accommodate mild-to-moderate limitations stemming from a mental impairment." Taylor, 2012 WL 294532, at *7. Moreover, "[e]ven a finding of moderate impairment in a

particular broad functioning area does not automatically indicate that a claimant's condition will significantly impact his or her ability to perform work-related functions." Bell v. Astrue, No. 8:07-cv-00924-JKS, slip op. at *9 (D.Md. Mar. 12, 2008). See also, Bowers, 2013 WL 150023, at *2 ("The finding of a moderate impairment in concentration, persistence, and pace does not indicate that restrictions other than a limitation to simple, unskilled work would be necessary.").

The ALJ performed a detailed mental RFC assessment and formulated a finding based on this assessment. Even if she had provided fewer restrictions in her final mental RFC, she still likely would not have committed reversible error. Accordingly, the Court finds the ALJ's mental RFC legally sufficient.

## B. The ALJ's Mental RFC Finding Was Supported by Substantial Evidence

Plaintiff argues that the ALJ's mental RFC determination is not supported by substantial evidence because the ALJ failed to address plaintiff's history of sexual abuse. (ECF No. 16-1, 9). Therefore, plaintiff contends, the ALJ's summaries of her mental health reports "do not reflect the true content of the reports." (Id.).

Defendant counters that the ALJ's duty is to determine the functional implications of a claimant's impairments and that plaintiff fails to show how her history of sexual abuse "affects

her ability to meet the mental requirements of work or shows that she cannot work." (ECF No. 18-2, 20). Defendant also contends that the ALJ considered the impact of plaintiff's sexual abuse in considering her mental health impairments and her functional limitations. (Id.)

In determining a claimant's mental RFC, it is the responsibility of the ALJ "to identify the pertinent evidence from medical and nonmedical reports and to make findings as to the individual's ability to perform work-related activities (RFC)." SSR 85-16. Medical evidence is "critical to determinations of disability" because "[i]t provides medical history, test results, examination findings, and observations, as well as conclusions of medical sources trained and knowledgeable in the diagnosis and treatment of diseases and disorders." Id.

Here, the ALJ extensively reviewed the mental health evidence of record in making her RFC determination. She began by summarizing plaintiff's testimony at the disability hearing. (R. 27-28). She then compared this testimony to plaintiff's mental health history, examining treatment notes from plaintiff's therapist Marge Boone and psychiatrist Dr. Martha Clevenger, M.D. at Marshy Hope Family Services from the period of December 2008 through February 2010. (R. 30). The ALJ next considered plaintiff's consultative mental examination with Dr.

Alan Peck, M.D. (R. 30-31). She subsequently attributed limited weight to Dr. Peck's opinion for its inconsistency with his own mental status examination and the record as a whole. (R. 32). The ALJ then discussed plaintiff's hospitalization in March 2010 for suicidal ideation and plan, and followed with a chronological review of plaintiff's post-hospitalization mental health. (R. 31). She based this review on 2010 treatment records from the same therapist and psychiatrist plaintiff had been seeing at Marshy Hope Family services. (R. 31). The ALJ also discussed the opinions of state agency medical consultants regarding plaintiff's mental health, accepting and rejecting specific findings in making her determination. (R. 33).

The Court finds that the ALJ's mental RFC finding was supported by substantial evidence. The ALJ's failure to explicitly discuss plaintiff's sexual abuse does not undermine the adequacy of the evidence here. An ALJ's focus is the claimant's "ability to perform work-related activities" and the "*effects of impairment*." SSR 85-16 (emphasis added). In this case, the ALJ thoroughly examined plaintiff's mental impairments in relation to plaintiff's functional capacity. Indeed, the physicians' reports the ALJ relied upon largely focused on the status of plaintiff's mental impairments, their impact on plaintiff's life, and plaintiff's treatment progress. (R. 598-618; 773-783). The underlying events that caused the

impairments, while relevant, do not themselves constitute mental impairments.  Nor do they alone reveal how plaintiff's mental ability to work has been affected.  Moreover, the medical reports the ALJ relied upon encompassed these events in their focus on plaintiff's resulting mental impairments.  Accordingly, the Court finds that the ALJ's mental RFC was supported by substantial evidence.

### C. The ALJ's Physical RFC Finding Was Supported by Substantial Evidence

Plaintiff argues that the ALJ's physical RFC finding is not supported by substantial evidence because the ALJ's finding on remand differs from her initial finding.  (ECF No. 16-1, 10). Plaintiff argues it was unreasonable to conclude that, having previously been limited to sedentary work, she could perform at the higher exertional level of light work after undergoing additional shoulder surgery with residual pain and limitations. (Id. at 11).  Plaintiff contends that the ALJ at step two acknowledged plaintiff's condition had worsened since the prior decision, thus contradicting the RFC finding that plaintiff could perform at a higher level of work.  (Id. at 10).  Finally, plaintiff notes that, as of her fiftieth birthday (which occurred while this matter was pending before the Appeals Council), a limitation to sedentary work would have resulted in

a favorable decision under GRID Rule 201.12.20 C.F.R Part 404, Subpart P, Appendix 2, Table No. 1. (<u>Id.</u> at 3).

Defendant counters that the physical RFC was supported by substantial evidence from the medical record. (ECF No. 18-2, 22). Defendant also notes that the substantial evidence standard permits the possibility of drawing different conclusions from the evidence. (<u>Id.</u> at 25). Further, defendant argues that the ALJ's step two finding does not contradict the RFC finding because of the different criteria used at each step. (<u>Id.</u> at 26). Finally, defendant argues that a limitation to sedentary work still would not have resulted in a finding of disability because plaintiff was only 49 years old at the time of the ALJ's decision. (<u>Id.</u> at 21).

As noted above, in reviewing the administrative decision, this Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. <u>Craig</u>, 76 F.3d at 589; <u>Hayes v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). The Commissioner, as fact finder, is responsible for resolving conflicts in the evidence. <u>Snyder v. Ribicoff</u>, 307 F.2d 518, 520 (4th Cir. 1962). If the Commissioner's findings are supported by substantial evidence, this Court is bound to accept them. <u>Underwood v. Ribicoff</u>, 298 F.2d 850 (4th Cir. 1962).

The parties agree that substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted). The issue here is whether the ALJ's decision met this standard, i.e., whether the ALJ's findings based on the evidence were ones that a "reasonable mind might accept," given her determination in a previous hearing.

The Court finds that the ALJ's physical RFC finding is supported by substantial evidence. Plaintiff argues that the ALJ could not reasonably find that plaintiff could perform light work after previously limiting her to sedentary work. This argument is unavailing. As a preliminary issue, it is important to note that a judgment vacated on appeal generally has no preclusive effect. See, e.g, S-1 By and Through P-1 v. State Bd. of Educ., 6 F.3d 160, 169 (4th Cir.1993) (Wilkinson, J., dissenting), vacated, 21 F.3d 49 (4th Cir.), cert. denied, 513 U.S. 876, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994); Baltimore Luggage Co. v. Samsonite Corp., 727 F. Supp. 202, 208 (D. Md. 1989); Zeneca Ltd. v. Novopharm Ltd., 919 F. Supp. 193, 196 (D. Md. 1996); See also United States v. Munsingwear, 340 U.S. 36, 40, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950). Here, the ALJ's previous decision was vacated, and the claim was remanded for a de novo hearing. (R. 77). Therefore, the ALJ was not bound by

her previous decision nor precluded from making different findings on remand.

Moreover, the substantial evidence standard provides for "the possibility of drawing two inconsistent conclusions from the evidence," and this "does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620, 86 S. Ct. 1018, 1026, 16 L. Ed. 2d 131 (1966) (citing National Labor Relations Board v. Nevada Consolidated Copper Corp., 316 U.S. 105, 106, 62 S.Ct. 960, 961, 86 L.Ed. 1305); See Also Lane v. Union Carbide Corp., 105 F.3d 166 (4th Cir. 1997) (In a black lung benefits case subject to substantial evidence review, a prior decision awarding benefits to a miner, which had been vacated and remanded by the Benefits Review Board, did not preclude ALJ from reconsidering relevant evidence and denying benefits on remand). The ALJ's finding was not inherently unreasonable by virtue of being different from the vacated finding and did not require additional justification.

Even so, the ALJ's finding on remand was supported by substantial evidence. First, the ALJ summarized plaintiff's testimony as to plaintiff's physical impairments at the remand hearing. (R. 26-27). Next, the ALJ compared this testimony with the medical record and concluded the record did "not disclose significant or persistent findings consistent with the

claimant's allegations of disabling neck, back, and upper extremity pain and stiffness." (R. 28). The ALJ ultimately determined that plaintiff could perform light work. (R. 26).

The ALJ first noted a lack of significant neurological abnormalities reported in the record. (Id.). She then cited a November 2007 report from the Maryland Spine Center showing pain on palpation in the lumbar spine, but no muscle spasm. (Id.). The ALJ noted that plaintiff denied any particular weakness and reported having significant relief from lumbar epidural steroid injections. (Id.). The ALJ also found the report reflected plaintiff's motor, sensation, and reflexes were normal. (Id.). Neural tension sign was positive on the right but negative on the left. (Id.). An MRI reflected hemangioma and disc dessication, but no disc herniation. (Id.).

The ALJ found no further mention of lower back complaints until plaintiff was involved in a motor vehicle accident in February 2009. An emergency room X-ray of the lumbar spine from that month showed "tiny scattered marginal osteophytes in the lower thoracic spine and early sclerotic degenerative changes of the L5-S1 facet joints." (R. 28). There was no evidence of spondylolysis or spondylolisthesis. (Id.). The ALJ also found that the disc spaces were preserved. (Id.). Plaintiff underwent physical therapy for her back from March to May 2009 and was discharged for a home exercise program, after which

there was no more evidence of lower back treatment or reported lower back symptoms. (Id.).

With regard to plaintiff's left shoulder pain, the ALJ cited the 2007 Maryland Spine Center report noting resolving cervical radiculopathy that was expected to improve. (R. 28). Plaintiff did not undergo treatment for her shoulder until November 2008, when Dr. Ward, plaintiff's orthopedic surgeon, recommended and performed arthroscopic decompression. (R. 29). Plaintiff complained of increasing pain and limitation after the surgery. (Id.). Physical examination revealed limited range of motion but no instability. (Id.). Subsequently, plaintiff continued physical therapy at the recommendation of Dr. Ward and told him in January 2009 that her pain and limitation had lessened. (Id.). Her range of motion and abduction had improved since her previous examination. (Id.). Further, the ALJ found, physical therapy notes from Cambridge Physical Therapy and Sports Care document improvement in range of motion, mobility, and strength. (Id.). Emergency room X-rays from February 2009 and March 2010 showed no abnormalities, and physical examination of the shoulder was normal. (Id.). The ALJ cited a Dr. Ward report from June 2009 stating that plaintiff's left side strength was 95% of her opposite side, and that plaintiff only complained of dull pain with less stiffness, despite no longer participating in physical therapy. (Id.).

The ALJ next turned to the October 2009 consultative musculoskeletal examination of Dr. Mohammed Zamani, M.D. Physical examination revealed restricted range of motion in the neck and back, but full ranges of motion in the shoulders, elbows, wrists, fingers, hips, knees, feet, and ankles. (R. 29). The ALJ noted slight reduction in straight leg-raising to 80 degrees. (Id.). The ALJ also found that plaintiff ambulated with a normal gait, that plaintiff could walk on her tiptoe and heel, and that plaintiff could squat three-quarters down and get up, although with back pain. (Id.). Muscle strength in the upper and lower extremities was full, and there was no evidence of rotator cuff tear, instability, or impingement of the shoulder. (Id.). The ALJ noted that Dr. Zamani opined that plaintiff could perform light work. (R. 32).

Finally, the ALJ reviewed records from Choptank Community Health System concerning plaintiff's allegations of leg pain. The ALJ noted an "unremarkable" physical examination. (R. 30). While plaintiff was diagnosed with causalgia of the lower limb and leg edema due to inactivity, there was no further mention of these leg issues in the medical records or at the hearing. (Id.). The ALJ concluded with a detailed discussion of the weight she gave the physicians' and medical consultants' opinions, as well as the weight she gave the state agency RFC assessments. (R. 31-33).

There is clearly substantial evidence to support the ALJ's finding. The above discussion is only a summary of the evidence the ALJ reviewed. The ALJ's actual analysis contains even greater detail. Plaintiff's argument ignores the possibility that the ALJ could find overall improvement in plaintiff's RFC or that the ALJ could reconsider plaintiff's credibility. Indeed, a full two years separated the initial hearing from the remand hearing (R. 20, 44), and it was certainly not unreasonable that new evidence be taken into consideration.

Plaintiff's contention that the ALJ's step two finding contradicts the RFC finding is also unavailing. At step two, the ALJ found that, in addition to her older impairments, plaintiff's left shoulder impairment was severe. (R. 23). However, these two steps do not use the same standard or method of analysis. Step two of the sequential evaluation is a threshold question with a *de minimis* severity requirement. <u>See</u> *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); SSR 88-3c, 1988 WL 236022. A finding that an impairment is severe at step two does not compel a finding of a certain RFC limitation. See, e.g., <u>Felton-Miller v. Astrue</u>, 459 F. App'x 226, 230 (4th Cir. 2011) ("[T]he ALJ's finding that Felton-Miller's degenerative disc disorder was a severe impairment at step two of the sequential evaluation does not contradict the ALJ's conclusion that the disorder's impact on

her functioning was mild."). Moreover, as discussed, the ALJ reheard the case *de novo* two years after the first hearing and reweighed the entire record, including new evidence. The ALJ's findings are not necessarily inconsistent as plaintiff contends.

Finally, plaintiff's assertion that a favorable decision would necessarily have been rendered had she been limited to sedentary work is unpersuasive. As noted, the ALJ was under no obligation to find plaintiff limited to sedentary work, and it was not unreasonable that she did not. Even if the ALJ had limited plaintiff to sedentary work, however, the GRID Rule plaintiff cites is inapplicable. GRID Rule 201.12.20 C.F.R Part 404, Subpart P, Appendix 2, Table No. 1. A requisite factor in this rule is that a claimant be closely approaching advanced age (age 50-54). <u>Id.</u> Plaintiff was neither fifty years old at the time of the initial hearing nor at the time of the remand hearing.[3] Hence, plaintiff's claim is unavailing.

## VI. Conclusion

For the reasons set forth above, the Court finds that the the ALJ's mental RFC finding is legally sufficient and supported by substantial evidence. The Court also finds that the ALJ's physical RFC finding is supported by substantial evidence.

---

[3] Plaintiff was born on January 17, 1962. (R. 166). She attained the critical age of fifty for disability purposes on January 16, 2012. (<u>Id.</u>). The two hearings took place on January 9, 2009 and March 11, 2011. (R. 17, 20).

Accordingly, the Court DENIES plaintiff's motion for summary judgment (ECF No. 16), GRANTS defendant's motion for summary judgment (ECF No. 18-2), and AFFIRMS the final decision of the Commissioner.


Date: 09/11/13                          /s/
                                 _____

                                 Susan K. Gauvey
                                 United States Magistrate Judge